IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| EDWARD MICHAEL PORRAZZO and MARIANNE VERONIKA SANDOR, | ) ) ) | MC 18-00106 LEK-KSC |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION | ) ) ) | |
| Defendant. | ) ) ) | |

**ORDER DENYING MOTION FOR ORDER PURSUANT TO CUSTOMER CHALLENGE PROVISIONS OF THE RIGHT TO FINANCIAL PRIVACY ACT OF 1978**

Before the Court is pro se Movants Edward Michael Porrazzo and Marianne Veronika Sandor's ("Movants") Motion for Order Pursuant to Customer Challenge Provisions of the Right to Financial Privacy Act of 1978 ("Motion"), filed on March 21, 2018. [Dkt. no. 1.] Respondent Securities and Exchange Commission ("SEC") filed its Verified Response to Motion to Quash or Modify Administrative Subpoena ("Verified Response") on March 27, 2018, and Movants filed their reply on April 2, 2018. [Dkt. nos. 3, 8.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules"). The Motion is hereby denied for the reasons set forth below.

**BACKGROUND**

Movants are a husband and wife who have, or previously had, accounts with Bank of America in Delaware ("BOA"), Wells Fargo Bank in Arizona ("Wells Fargo"), Chase Bank in Indiana ("Chase"), and First Hawaiian Bank in Hawai`i ("FHB" and collectively, "the Financial Institutions"). In SEC Matter LA-4895 regarding Moddha Interactive Inc. ("Moddha"), the SEC has served a subpoena on each of the Financial Institutions for Movants' financial records ("Subpoenas"). [Motion at 2.[1]]

According to the SEC, Movants are Moddha's principals, and Moddha is a Hawai`i corporation that has been offering or selling securities since at least July 2012. [Verified Response at 1-2.[2]] Moddha describes itself as "a worldwide Positive Media and Technology Corporation that is uniquely positioned to profit from consumer product sales, subscription services; including vast licensing dollars with its proprietary hardware, software

---

[1] The Motion does not have page numbers. All citations to the Motion in this Order refer to the page numbers assigned by the district court's electronic case filing system. Although not labeled as such, the first page appears to be the Motion page and pages 2-5 appear to a memorandum in support.

[2] Submitted with the Verified Response, pursuant to 12 U.S.C. § 3410(b), is the Verification of Jasmine M. Starr ("Starr Verification"). [Dkt. no. 3-1.] Jasmine Starr is a SEC senior counsel with the Division of Enforcement. Because she is one of the attorneys designated as an officer on the Moddha investigation, she is familiar with the facts of the investigation and certifies the facts in the Verified Response are true and correct. [Starr Verification at ¶¶ 1-2.]

and original content in diverse global industries." [Starr Verification, Exh. 2 (Moddha's Confidential Private Offering Memorandum ("Offering Memo")) at 5.] Moddha's securities are not registered with the SEC. The SEC asserts it "has cause to believe that since January 2017, Moddha has potentially raised at least $780,000 in funds from 8 investors who were likely provided the company's [Offering Memo] in the course of their decision to invest." [Verified Response at 3.]

Movants ask this Court to quash or modify the Subpoenas pursuant to the Right to Financial Privacy Act of 1978 ("RFPA"), 12 U.S.C. § 3401, *et seq.*, on the ground that the records sought in the Subpoenas are not relevant to the law enforcement inquiry described in the Customer Notice Movants received on March 16, 2018, even if the inquiry is legitimate. [Motion at 2-3.] According to Movants, even though they did not receive the Subpoenas until March 16, the SEC served them on the Financial Institutions on or about March 5, 2018. One of the Financial Institutions informed Movants it was providing their personal account records. Movants state this occurred before they had notice of the Subpoenas and an opportunity to respond. [Id. at 4-5.]

Movants state the letter accompanying the Subpoenas described SEC Matter LA-4895 as "a non-public, fact-finding inquiry." [Id. at 3.] The investigation was launched based on a

3

complaint the SEC received against Moddha. Movants state they "are reasonably informed" the complaint was made by a "disgruntled shareholder" of Moddha, who also filed a civil case against Moddha "for an unpaid loan he solicited from the Company with Usurious interest." [Id.] Movants contend the disgruntled shareholder's complaint is meritless. [Reply at 7.]

According to Movants, the Subpoenas cover their personal financial records, many of which are not related to the fact-finding investigation regarding Moddha. Movants acknowledge their personal financial records could be said to contain some information that "touches a matter under the SEC's Fact-Finding investigation," but Movants argue the scope of the Subpoenas is excessive for the investigation, which is at an "initial, early stage." [Motion at 3.] Movants argue the $1,000.00 minimum threshold in the Subpoenas is insufficient to eliminate transactions irrelevant to the investigation. They contend courts routinely quash similar subpoenas as overbroad, unnecessarily intrusive, and a violation of the RFPA, particularly where there has been no prior showing of wrong-doing. Moreover, the broad scope of the Subpoenas is unnecessary because Moddha is fully cooperating with the investigation, and there are other reasonable alternatives to obtain relevant information. [Id. at 3-4.] Movants also contend the current Moddha investigation is improper because they and Moddha have

already been cleared of wrong-doing in SEC Case Number SEU-204-046. [Reply at 8.]

Movants ask this Court to: 1) quash or modify the Subpoenas; and 2) order that the records already provided by the Financial Institutions pursuant to the Subpoenas be returned. If this Court declines to quash or modify the Subpoenas, Movants ask this Court to stay their enforcement pending appeal because Movants have "shown and can show a likelihood of success on the merits." [Motion at 5.]

The SEC states the Subpoenas were issued after it discovered a substantial amount of investor funds Moddha raised were transferred to Movants' personal accounts. [Verified Response at 1.] The SEC submitted its Order Directing Private Investigation and Designating Officers to Take Testimony ("Investigation Order"), which the SEC states was issued on January 31, 2018. [Starr Verification, Exh. 1; Verified Response at 2.] The SEC also submitted copies of the subpoena and a transmittal letter to Chase ("Chase Subpoena"), BOA ("BOA Subpoena"), and FHB ("FHB Subpoena"). [Starr Verification, Exhs. 3.1, 3.2, 3.3.] The SEC did not submit a copy of the subpoena served on Wells Fargo ("Wells Fargo Subpoena") because the SEC contends the Motion does not challenge it. [Verified Response at 5 n.2.]

According to the SEC, Moddha has a corporate banking account at BOA, and Movants are the only signatories. Based on the investigation to date, the SEC states:

> Based on a preliminary analysis account records in 2017 and early 2018, about $780,000 in investor funds was apparently deposited to its corporate account in that time. It appears, however, that more than $121,000 of corporate funds were converted for movants' personal use, in the form of transfers to Porrazzo and Sandor, and travel, meals, and shopping expenses (e.g., purchases at retailers like Liquor Barn, Costco, Lowe's, and Target that have no evident corporate purpose).

[Id. at 3-4.] Further, Movants have admitted: using the corporate account for personal expenses and using personal accounts to pay corporate expenses; intermingling funds from the corporate account with their personal accounts; using one ledger to record personal account transactions and corporate transactions; and receiving loans from Moddha. [Id. at 4.] The Offering Memo contains a section describing how the proceeds from the offering would be used. The section does not disclose that invested funds could be used for Movants' personal purposes. [Offering Memo at 52-53.]

The SEC asserts the Chase Subpoena, BOA Subpoena, and FHB Subpoena were issued regarding Movants' personal accounts "to obtain additional information on, among other things, whether movants were engaging in a misappropriation of investor funds in violation of the representations made by Moddha's [Offering Memo], and where investor funds might currently be located,

6

should disgorgement be ordered against Moddha and its principals at some later date." [Verified Response at 4-5.] The SEC states customer notice about those Subpoenas were provided to Movants, pursuant to the RFPA, by certified mail on the date they were issued. Further, the Subpoenas were provided to Movants' counsel by email. [Id.]

**STANDARD**

Under the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. § 3401 *et seq.*, a financial institution may disclose a customer's financial records if such records are properly requested by a governmental authority via an administrative subpoena or judicial subpoena. 12 U.S.C. § 3402(2) and (4). If a customer objects to the disclosure of their records, the customer must file a motion to quash the subpoena that includes an affidavit or sworn statement, and timely serve the government entity with the motion. 12 U.S.C. § 3410(a);[3] see also S.E.C. v. Jerry T. O'Brien,

---

[3] Section 3410(a) states, in relevant part:

Within ten days of service or within fourteen days of mailing of a subpena, summons, or formal written request, a customer may file a motion to quash an administrative summons or judicial subpena, or an application to enjoin a Government authority from obtaining financial records pursuant to a formal written request, with copies served upon the Government authority. A motion to quash a judicial subpena shall be filed in the court which issued the subpena. A motion to quash an administrative summons or an application to enjoin a Government authority from obtaining records pursuant to a formal written request shall be filed in the appropriate United States district court. Such motion or application shall contain an affidavit or sworn statement

(continued...)

Inc., 467 U.S. 735, 745, 104 S. Ct. 2720, 81 L. Ed. 2d 615 (1984) (noting that "[a] customers's ability to challenge a subpoena [under the RFPA] is cabined by strict procedural requirements"). If the Court orders the government entity to respond to the motion to quash, the government must filed a sworn response. § 3410(b).

In ruling on the motion, the Court relies on the parties' sworn statements and any additional proceedings the Court finds appropriate. § 3410(b). The Court must deny the motion to quash if either the applicant is not a customer whose financial records are being requested or "there is a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry." § 3410(c); Rodriguez v. Fed. Sav. and Loan Ins. Corp., 712 F. Supp. 159, 162 (N.D. Cal. 1989). The government entity has the ultimate burden of showing that the records sought are relevant to a legitimate law enforcement inquiry. In re Blunden, 896 F. Supp. 996, 999 (C.D. Cal. 1995) (quoting Collins v. Commodity Futures Trading Comm., 737 F. Supp. 1467, 1480 (N.D. Ill. 1990). "For purposes of an administrative subpoena, the notion of relevancy is a broad one." Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd., 878 F.2d 875, 882 (5th Cir. 1989). Subpoenaed information is relevant if it "touches a matter under investigation." Id. See also United States v. Wilson, 571 F. Supp. 1417, 142 (S.D.N.Y. 1983) ("the RFPA requires only

---

[3] (...continued)
    (1) stating that the applicant is a customer of the financial institution from which financial records pertaining to him have been sought; and

    (2) stating the applicant's reasons for believing that the financial records sought are not relevant to the legitimate law enforcement inquiry stated by the Government authority in its notice, or that there has not been substantial compliance with the provisions of this chapter.

> that financial information be relevant to a
> 'legitimate law enforcement inquiry,' and not
> relevant in a narrow, evidentiary sense."); <u>S.E.C.
> v. Nicita</u>, 2007 WL 1704585, *3 n.4 (S.D. Cal.
> June 13, 2007). An administrative agency with
> statutory authority to engage in investigative and
> accusatory duties may "investigate merely on
> suspicion that the law is being violated, or even
> just because it wants assurance that it is not."
> <u>U.S. v. Morton Salt Co.</u>, 338 U.S. 632, 642-42, 70
> S. Ct. 357, 94 L. Ed. 401 (1950).

<u>Tabet v. U.S. S.E.C.</u>, No. 12cv1596-IEG (DHB), 2012 WL 3205581, at *2 (S.D. Cal. Aug. 6, 2012) (some alterations in <u>Tabet</u>).[4] "Under this standard, a "declaration of [a] government official attesting to [the] commencement of investigation . . . [is] sufficient to establish [that the] law enforcement inquiry is legitimate, and records are relevant." <u>Tabet</u>, 2012 WL 3986656, at *1 (some alterations in <u>Tabet</u>) (some citations omitted)

---

[4] 2012 WL 3205581 is the magistrate judge's order denying the Tabets' RFPA motion, which was affirmed by the district court after denial of the Tabets' objections. 2012 WL 3986656 (Sept. 11, 2012). Movants argue, under <u>Tabet</u>, there is no "Rush to Rule" on their Motion because "the original documents" in <u>Tabet</u> were filed on February 7, 2012, and the court's "definitive ruling" was not issued until September 11, 2012. [Reply at 2.] Movants are mistaken. In <u>Tabet</u>, the SEC's formal order of investigation was issued on February 7, 2012, but the Tabets did not file their RFPA motion until June 28, 2012. The SEC filed its verified response on July 30, 2012, and the magistrate judge denied the Tabet's motion on August 6, 2012, *i.e.* within seven days after the SEC filed its verified response. <u>Tabet</u>, 2012 WL 3205581, at *1. The district judge's order affirming the magistrate judge's order in <u>Tabet</u>, 2012 WL 3986656, does not excuse this Court from complying with the § 3410(b) requirement to rule on an RFPA motion to quash within seven days after the government files a response.

9

(quoting Rosiere v. U.S. S.E.C., No. 2:09CV01975JCMPAL, 2010 WL 489526, at *3 (D. Nev. Feb. 5, 2010)).

**DISCUSSION**

I. **Preliminary Issues**

   A. **Timeliness of the Motion**

Under the RFPA, the government agency seeking to subpoena a customer's financial records must mail a copy of the subpoena with a notice to the customer. 12 U.S.C. § 3405(2). A customer must file a motion to quash or modify a subpoena "[w]ithin ten days of service or within fourteen days of mailing" the subpoena. § 3410(a).

Although the Subpoenas are dated March 5, 2018, and the SEC states the customer notice was mailed to Movants on the same date, Movants state they only received the notice on March 16, 2018. [Verified Response at 4-5; Motion at 2.] The Motion was filed on March 21, 2018, which was more than fourteen days after the mailing of the notice. However, this district court has stated: "§ 3410 requires customers to file their motion to quash within ten days of receiving in-hand service or within fourteen days of the date notice was mailed to the customer." Turner v. United States, 881 F. Supp. 449, 451 (D. Hawai`i 1995). Because Movants did not receive in-hand service of the customer notice until March 16, 2018, the Motion is timely because Movants filed the Motion within ten days of March 16.

**B.   Scope of the Motion**

Although the memorandum in support of the Motion challenges the Subpoenas collectively, the Motion page itself states Movants' "financial records are held by, Bank of America, First Hawaiian Bank and Chase Bank." [Motion at 1.] The Motion page does not refer to the Wells Fargo Subpoena. The Court therefore construes the Motion as only contesting the BOA Subpoena, FHB Subpoena, and Chase Subpoena ("Contested Subpoenas").

Even if Movants mistakenly omitted the Wells Fargo Subpoena from the Motion page and intended to challenge all four Subpoenas, the analysis set forth below would also apply to the Wells Fargo Subpoena. The Motion would also be denied as to the Wells Fargo Subpoena, if it were properly before this Court.

**II.   Movants' Challenge to the Contested Subpoenas**

The BOA Subpoena requests documents, from January 1, 2014 to the present, for "any account in the name of Marianne Veronika Sandor, also known as Veronika Sandor." [Starr Verification, Exh. 3.1 at 6 (defining the "Relevant Period"), 8 (describing the "Documents to be Produced").[5]] The Chase Subpoena requests documents, from January 1, 2014 to the present,

---

[5] Each of the Contested Subpoenas consists of multiple parts that are not consecutively paginated. All citations to any of the Contested Subpoenas refer to the page numbers assigned in the district court's electronic case filing system.

11

for "any account in the name of Edward Michael Porrazzo, also known as Edward Porrazzo." [Starr Verification, Exh. 3.2 at 6, 8 (same).] The FHB Subpoena requests documents, from January 1, 2014 to the present, for "any account in the name of Marianne Veronika Sandor, also known as Veronika Sandor." [Starr Verification, Exh. 3.3 at 6, 8 (same).]

Movants are the "customers" whose records are sought in the Contested Subpoenas. See 12 U.S.C. § 3401(5) ("'customer' means any person or authorized representative of that person who utilized or is utilizing any service of a financial institution, or for whom a financial institution is acting or has acted as a fiduciary, in relation to an account maintained in the person's name"). This Court must therefore determine whether: "there is . . . a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry"; and whether "there has . . . been substantial compliance with the provisions of this chapter." See § 3410(c).

Movants contend the Contested Subpoenas are overbroad, but that is not the standard for whether a subpoena should be quashed or modified under the RFPA. See Sandsend Fin. Consultants, 878 F.2d at 882. Moreover, Movants have not established the Contested Subpoenas are overbroad. Although Movants also argue the Contested Subpoenas are unnecessary

12

because Moddha has been cooperating with the investigation, they have not identified any specific evidence Moddha has produced to the SEC that would render the Contested Subpoenas entirely unnecessary. Movants have agreed to be interviewed by the SEC on April 19 and 20, 2018, but that fact does not render the Contested Subpoenas improper in light of the nature of the alleged securities violations. Further, the SEC represents review of the records sought in the Contested Subpoenas is necessary for it to prepare to interview Movants. [Verified Response at 1.] Movants have apparently provided the SEC with statements that all investor funds have been applied pursuant to the disclosures in the Offer Memo, and were placed in Moddha's business account with BOA. [Reply at 6.] However, the SEC is not required to accept Movants' statements without the opportunity to confirm them through examination of the records referenced in the Contested Subpoenas. Also rejected are Movants' arguments that the Moddha investigation is not legitimate and, even if legitimate, the Contested Subpoenas are not relevant to the investigation merely because the investigation is in its early stages. Movants have also failed to support their argument that the instant investigation is duplicative of Case Number SEU-204-046.

Based on the verified statements and exhibits submitted by the SEC, this Court finds, at this time: there is "a

demonstrable reason to believe" the SEC's investigation of Moddha's potential securities violations is legitimate; and there is "a reasonable belief" the records sought in the Contested Subpoenas are relevant to the SEC's investigation because of the evidence Movants used monies from Moddha investors for personal purposes, contrary to statements in the Offering Memo about how the invested funds would be used.

Finally, as to the issue of whether there has been substantial compliance with the RFPA, the only issue of non-compliance raised in the Motion is Movants' allegation the SEC failed to give them timely notice of the Contested Subpoenas. The RFPA requires a government agency issuing a subpoena for a customer's financial records to serve a copy of the subpoena on the customer or mail it to the customer's last known address "on or before the date on which the subpena . . . was served on the financial institution together with" the required notice. § 3405(2). The SEC asserts it mailed the Contested Subpoenas and the required notice to Movants, by certified mail, on March 5, 2018 – the day the SEC issued the Contested Subpoenas. The SEC therefore timely provided Movants with the Contested Subpoenas and the required notice. This Court conclude that, in issuing the Contested Subpoenas, the SEC has substantially complied with RFPA's provisions.

The Motion is denied because, at this time, there is: a demonstrable reason to believe the SEC's investigation of Moddha is legitimate; a reasonable belief the records sought in the Contested Subpoenas are relevant to the investigation; and substantial compliance with the RFPA's provisions.  The denial of the Motion is without prejudice to the filing of other RFPA motions challenging future SEC subpoenas.

## III. Stay Pending Appeal

Movants also ask this Court to stay the enforcement of the Contested Subpoenas until the resolution of Movants' anticipated appeal.  [Motion at 5.]  As one district court has stated:

> The RFPA explicitly states that a court decision denying a motion to quash a subpoena under the statute "shall not be deemed a final order and no interlocutory appeal may be taken therefrom by the customer."  12 U.S.C. 3410(d). See Daly v. United States of America, 51 F.3d 285, 285 (10th Cir. 1995).  "Instead, the customer only may appeal as part of the final order in any subsequent legal proceeding brought by the government authority based on the subpoenaed records, or within thirty days of notification by the government authority that it does not intend to take further legal action."  Id. (citing 12 U.S.C. 3410(d)).  See also [S.E.C. v.] Jerry T. O'Brien. Inc., 467 U.S. [735,] 745, 104 S. Ct. 2720 [(1984)] (stating that a customer moving to quash a subpoena "cannot appeal an adverse determination until the Government has completed its investigation").

Exch. Point LLC v. U.S. S.E.C., 100 F. Supp. 2d 172, 177
(S.D.N.Y. 1999). Because Movants cannot appeal the instant Order
at this time, they cannot obtain a stay pending appeal.

Even if this Court considered Movants' request for a
stay pursuant to this Court's inherent powers, see In re Taggart,
CIVIL ACTION NO. 15-mc-255, 2016 WL 3902939, at *1 (E.D. Pa.
July 19, 2016) (utilizing inherent powers analysis to a motion
for stay pending appeal of an order denying RFPA motion), this
Court would deny Movants' request for a stay. The Motion does
not establish the relevant interests weigh in favor of granting a
stay pending Movants' anticipated appeal. See, e.g., Hawai`i v.
Trump, 233 F. Supp. 3d 850, 853 (D. Hawai`i 2017) (listing
competing interests that must be weighed in considering a request
for a stay pursuant to the district court's inherent powers).

Movants' request to stay the enforcement of the
Contested Subpoenas pending their anticipated appeal of this
Order is therefore denied.

## CONCLUSION

On the basis of the foregoing, Edward Michael Porrazzo
and Marianne Veronika Sandor's Motion for Order Pursuant to
Customer Challenge Provisions of the Right to Financial Privacy
Act of 1978, filed March 21, 2018, is HEREBY DENIED in its
entirety. The denial is WITHOUT PREJUDICE to the filing of other
RFPA motions challenging future SEC subpoenas.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 2, 2018.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**EDWARD MICHAEL PORRAZZO, ET AL. VS. UNITED STATES SECURITIES & EXCHANGE COMMISSION; MC 18-00106 LEK-KSC; ORDER DENYING MOTION FOR ORDER PURSUANT TO CUSTOMER CHALLENGE PROVISIONS OF THE RIGHT TO FINANCIAL PRIVACY ACT OF 1978**